## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LEO Z. TARR,                          )
                                      )
        Plaintiff,                    )        2:16-cv-1424
                                      )
            v.                        )
                                      )
CITY OF PITTSBURGH, ET AL,            )
                                      )
        Defendants.                   )
                                      )

## **OPINION**

### **Mark R. Hornak, Chief United States District Judge**

This case arises out of a dispute between neighbors over a parking spot that ended in the

hospitalization and arrest of Plaintiff Leo Tarr ("Plaintiff"). (2d Am. Compl., ECF No. 56 ¶¶ 7,

41.) At this summary judgment stage, only two claims remain in the case, both against Defendant

Officer Antonio Ruiz ("Officer Ruiz").[1] First, Plaintiff asserts a violation of his Fourth

Amendment Right against Malicious Prosecution. (2d Am. Compl. ¶¶ 54–75.) Second, Plaintiff

asserts a violation of his Fourth Amendment Right against False Arrest. (*Id.* ¶¶ 76–79.) For the

reasons that follow, Officer Ruiz's Motion for Summary Judgment, ECF No. 113, is granted.

### I.      **BACKGROUND**

The undisputed facts show that on October 26, 2015, Plaintiff called the police to report

that his next-door neighbor, Mr, Montgomery, had struck Plaintiff with a brick on Plaintiff's front

---

[1] Plaintiff initially filed suit against Defendants City of Pittsburgh, Antonio Ruiz, and Glen Cummins, alleging various
42 U.S.C. § 1983 violations. Defendants filed a Motion for Summary Judgment on all claims. (Defs.' Mot. for Summ.
J., ECF No. 113.) Based on the stipulation of all parties at the Oral Argument, the Court entered an Order dismissing
all claims against Defendant City of Pittsburgh and Defendant Glenn Cummins. (Order, ECF No. 131.) The Court
also dismissed Count III of Plaintiff's Second Amended Complaint against all Defendants. (*Id.*)

porch.[2] Officer Ruiz responded to the scene.[3] As the "reporting officer," Officer Ruiz prepared an investigative report with an account of events that later comprised the affidavit of probable cause for Plaintiff's arrest (the "Affidavit").[4] The Affidavit stated:

> On 10/26/2015 at 1300 hours, I, PO Antonio Ruiz was dispatched to [] Lakewood Street for a reported assault in progress. Upon arrival [five other police officers] were on scene with actor/victim separated. I first spoke With Robert [sic] Montgomery, resident of [ ] Lakewood Street, Montgomery told me shortly before Officers arrived, he was confronted by his neighbor from [ ] Lakewood, Leo Tarr. Montgomery told me that he and Tarr had a verbal altercation over a parking spot. Montgomery told me Tarr lunged at him with a brick, attempting to strike him with it. Montgomery, fearing for his safety, told me he pushed Tarr off of him, acting in self defense [sic]. When Montgomery pushed Tarr away from his person, Montgomery told me Tarr fell backward. and struck his head on a retaining wall on Tarr's property.
>
> Montgomery reported Tarr lunged at him a second time, again with a brick, attempting to strike him. Montgomery, fearing for his safety, told me he pushed Tarr away in self defense [sic]. Montgomery told me after pushing Tarr away the second time, he ran into his home. I spoke Robert Rizzo, and John Bailey who witnessed the altercation while doing construction work across the street. Both witnesses corroborate that Tarr had been the primary aggressor, lunged toward Montgomery twice with a brick, and Montgomery's auctions [sic] were clearly in self defense [sic].
>
> According to witnesses Robert Rizzo, and John Bailey, while Tarr [was] attempting to attack Montgomery, Tarr sustained injury to his head by falling onto a retaining wall on his property. City Medic 3 transported Tarr to Mercy Hospital for further treatment. Montgomery was not injured during the altercation, but expressed concern for his safety, as the actor is his next door [sic] neighbor.
>
> Due to the facts and circumstances surrounding this incident, I will request for the arrest of Leo Tarr.[5]

---

[2] (Defs.' Reply to Pl.'s Resp. Concise Statement of Material Facts, ECF No. 126 ¶ 47.)

[3] (*Id.* ¶ 52.)

[4] Redactions have been made where the individuals' addresses appeared. The actual house numbers of the home addresses are not germane to the issues here and have been removed for personal security purposes.

[5] (Ex. 21-Criminal Compl. and Aff. of Probable Cause, Pl.'s App'x to Pl.'s Responsive Concise Statement of Material Facts and Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., ECF No. 125-21, at 5. *Compare id.*, *with* Ex. 19-Investigative Report, ECF No. 125-19.)

After Officer Ruiz submitted the Affidavit, Plaintiff was arrested for aggravated assault, in violation of 18 Pa. C.S. § 2702(a)(4), and harassment, in violation of 18 Pa. C.S. § 2709(a)(1),(2), or (3).[6] However, these criminal charges were later dismissed.[7]

Plaintiff asserts that Officer Ruiz's Affidavit contained material misrepresentations and omissions that resulted in his arrest without probable cause, and based on the information available to Officer Ruiz at the time he prepared the Affidavit, "any reasonable police officer in his position would have[ ]entertained serious doubts as to whether" Plaintiff committed any criminal offense.[8] Specifically, Plaintiff contends that the Affidavit contained the following misrepresentations and omissions:

- The Affidavit omitted that Plaintiff reported Montgomery's assault on him in his 911 call.

- The Affidavit omitted any mention of the eyewitness accounts that Montgomery assaulted Plaintiff with a brick.

- The Affidavit falsely stated that Plaintiff's head injury was self-inflicted from hitting his head on a retaining wall.

- Officer Ruiz failed to examine the retaining wall where he reported that Plaintiff struck his head.

- The Affidavit omitted the location of the altercation—Plaintiff's property including his front porch.

---

[6] (Ex. 21-Criminal Compl. and Aff. Of Probable Cause, ECF No. 125-21, at 2; Defs.' Reply to Pl.'s Resp. Concise Statement of Material Facts, ECF No. 126 ¶ 63.)

[7] (Defs.' Reply to Pl.'s Resp. Concise Statement of Material Facts, ECF No. 126 ¶ 89.)

[8] (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., ECF No. 123, at 12.)

- Officer Ruiz's failed to speak with Plaintiff, the 911 caller, about the events, and thus omitted Plaintiff's account of the altercation from his Affidavit.

The parties agree that Plaintiff made a call to 911 and reported that his neighbor, Montgomery, struck him in the head with a brick.[9] Although the parties dispute whether Officer Ruiz was aware of all the details given in the 911 call when he arrived on the scene, Officer Ruiz was able to review the computer-aided dispatch ("CAD") printout that was created from Plaintiff's 911 call at the time he completed the Affidavit.[10] The CAD names Plaintiff as the caller and states, "CALLER STATEMENT: 46 YOM ASSAULTED WITH BRICK. 3. THE ASSAILANT IS GONE: NEXT DOOR NEIGHBOR/JAMES MONTOGOMERY/[ ] LAKEWOOD 4. THE ASSAILANT IS ARMED: BRICK . . . NEXT DOOR NEIGHBOR ATTACK CALLER WITH BRICK, HIT IN HEAD, CALLER HOME ALONE BLEEDING PROFUSELY[.]"[11]

The individual accounts of the altercation differ dramatically from one another.[12] In a deposition, Montgomery was asked to review the Affidavit, and he testified that it correctly captured the statements that he gave to Officer Ruiz.[13] Contrary to Plaintiff's statement in his 911 call, Montgomery testified that he did not pick up a brick or anything else during the altercation.[14]

One of the eyewitnesses, Robert Rizzo, testified nearly two years after the incident that on October 26, 2015, he was performing construction work on a home on Lakewood Street.[15] Rizzo

---

[9] (Defs.' Reply to Pl.'s Resp. Concise Statement of Material Facts, ECF No. 126 ¶ 48.)

[10] (Ruiz Dep., ECF No. 133-4, at 40:7–15.)

[11] (Defs.' Reply to Pl.'s Resp. Concise Statement of Material Facts, ECF No. 126 ¶ 50.)

[12] There was some dispute between the parties as to misrepresentations of record evidence. To that end, the Court Ordered full transcripts of deposition testimony entered into the record, and its analysis is based on the matters reflected in the record itself.

[13] (Montgomery Dep., ECF No. 133-2, 20:17–24:16.)

[14] (*Id.* at 72:20–25.)

[15] (Rizzo Dep., ECF No. 133-3, at 21:17–19.)

4

first noticed the altercation when he heard a "commotion,"[16] at which time he looked up to see Plaintiff and Montgomery "tussling"[17] on the walkway outside of Plaintiff's house and eventually making their way onto Plaintiff's porch.[18] Rizzo testified that he discussed with the police officers that Plaintiff had an object in his hand during the tussle,[19] but when the police asked if the object was a brick, Rizzo responded that he was unsure what the object was.[20] Rizzo recalled that he discussed self-defense with the police, but he described both Plaintiff and Montgomery as "aggressors," with both men "tussling with one another."[21] Rizzo testified that he did not mention or discuss a retaining wall with the police, he did not see Plaintiff hit his head on the retaining wall, and Plaintiff and Montgomery were not near a retaining wall during the altercation.[22]

---

[16] (*Id.* at 36:11–37:25.)

[17] (*Id.* at 38:1–4.)

[18] (*Id.* at 40:15–22, 43:21.)

[19] (*Id.* at 63:25–64:4.)

[20] (*Id.* at 72:16–21.) The City of Pittsburgh Office of Municipal Investigation also investigated the events of this case after Plaintiff filed a complaint with the City. (ECF No. 116-5.) The City interviewed Rizzo over the phone on January 4, 2016, but Rizzo was not under oath. During that phone interview, Rizzo told the interviewer that "one guy" (matching Plaintiff's description) had an object in his hand and Rizzo was "99%" certain that the object was a brick, but the other guy (Montgomery) then picked up a brick and hit the guy with it. (*Id.*) There was no inquiry at that time as to what he remembered telling police. However, at his deposition, he specifically testified that at the time the police interviewed him, he told them that he was "unsure" what the object was. (ECF No. 133-3, at 72:16–21.)

[21] (*Id.* at 71:18–23, 72:19–25, 81:9–82:18.) When asked whether he saw Plaintiff attempting to strike Mr. Montgomery, Rizzo gave the following answers:
> Q.   Okay. Well, did it appear to you that Mr. Tarr, the individual with the object, was trying to strike Mr, Montgomery?
> A.   It appeared to be, yes.
> Q.   Did you see him Strike Mr. Montgomery at all?
> A.   It appeared he was trying to, but they were tussling with one another. So ---
> Q.   But you saw him take some swings at him, Mr. Tarr take some swings at Mr. Montgomery?
> A.   No. I can't say that for certain.

(*Id.* at 44:16–25.)

Officer Ruiz relies heavily on a statement given by Rizzo to the Office of Municipal Investigations about what Rizzo observed during the altercation. However, that statement makes no mention of what Rizzo actually told Officer Ruiz at the scene. Therefore, it is not helpful to the extent the Court must piece together what information was available to Officer Ruiz at the time he prepared the Affidavit.

[22] (*Id.* at 97:9–11, 45:21–22, 78:6–21.)

5

Coincidentally, Rizzo was working on another neighbor's retaining wall when the altercation broke out.[23] Rizzo testified that the altercation ended when Montgomery hit Plaintiff in the head with a brick twice before Plaintiff ran into his house.[24]

The Affidavit states that another witness, John Bailey, gave an account of the altercation, but the record before the Court indicates that John Bailey was not deposed in the case. There is no evidence either corroborating or refuting what he told police at the time of the altercation other than Rizzo's testimony that Bailey simply told police "the story."[25] Bailey was later interviewed by the City of Pittsburgh's Office of Municipal Investigations (OIM) about what he saw. Bailey reported (but was not under oath) that he saw Plaintiff standing on his porch arguing with Montgomery, who was on the sidewalk.[26] At this point in time, Plaintiff had an object in his hand that looked like a brick, and then the men began tussling around on the porch.[27] Bailey reported to

_____

[23] (*Id.* at 22:5–7.)

[24] (*Id.* at 50:22–51:17.) Moments after Rizzo testified that he saw Montgomery hit Plaintiff in the head with a brick, the following exchange occurred:

Q.    Did you tell several officers what happened?
A.    Yes.
Q.    Was that individual conversations with police officers?
A.    No, Me, John Bailey, and several police officers discussed what happened.
Q.    And did you tell them the same thing that you're stating today?
A.    Yes.

(*Id.* at 59:15–23.)

[25]    Q. Do you remember what, if anything, Mr. Bailey said when the police were talking with you?
A. He told the story.
Q. Was Mr. Bailey with you the entire time that you were speaking with the police officers?
A. Yes.
Q. And you were with Mr. Bailey, as far as you know, the entire time that he was talking to the police officers?
A. Yes.
Q. Was there any discussion about how Mr. Tarr had hurt his head?
A. Yeah. Said the incident. Yes.
Q. Was there any discussion at all about whether Mr. Tarr or Mr. Montgomery had come into contact with the retaining wall between their properties?
A. No.

(*Id.* at 60:8–24.)

[26] (Ex. E-OIM Interview with John Bailey, ECF No. 116-5, at 10.)

[27] (*Id.*)

6

OIM that he did not see either individual get hurt, describing the altercation as "squabbling around on the porch, stumbling."[28] It is unclear how this account compares with the account that Bailey gave police.

In Officer Ruiz's deposition, he testified that he arrived on the scene and saw one Officer with Montgomery and two officers and medics with Plaintiff near Plaintiff's porch.[29] Officer Ruiz testified that when he interviewed Montgomery after arriving on the scene, Montgomery told Officer Ruiz that Plaintiff "came after him with a brick and that he pushed him away and defended himself," and Plaintiff may have hit himself on the retaining wall.[30] He recalled that Mr. Rizzo and another eyewitness gave him "similar accounts of what happened,"[31] but he could not recall the specific questions and answers exchanged.[32] Officer Ruiz admitted that he made no effort to examine any retaining wall or check for evidence of someone having struck their head on a retaining wall.[33] Officer Ruiz had no recollection of any witness or Montgomery referencing Plaintiff's porch.[34] Nor did he gather any information from Plaintiff himself or receive any information from Plaintiff through other police officers.[35]

---

[28] (*Id.* at 11.)

[29] (Ruiz Dep. ECF No. 133-4, at 18:23–19:13.)

[30] (*Id.* at 53:14–19.)

[31] (*Id.* at 77:13–16.)

[32] (*Id.* at 16:3–17:8.)

[33] (*Id.* at 54:16–21.)

[34] (*Id.* at 71:25–72:1.)

[35] (*Id.* at 20:24–21:1.)

## II.    LEGAL STANDARD

A party is entitled to summary judgment if it can show that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A genuine issue of material fact is one that 'affects the outcome of the suit under the governing law' and could lead a reasonable jury to return a verdict in favor of the nonmoving party." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Initially, the moving party bears the burden of demonstrating that the evidentiary record presents no genuine issue of material fact. *Willis*, 808 F.3d at 643. If it does so, the burden shifts to the nonmoving party to "identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden . . . the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643. Inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.    ANALYSIS

Officer Ruiz moves for summary judgment on both remaining claims on two bases. First, Officer Ruiz argues that there was probable cause for Plaintiff's arrest such that no constitutional rights were violated. Second, Officer Ruiz argues that he is entitled to qualified immunity because even if there was a constitutional violation, the involved right was not "clearly established" at the time of the arrest.

Our Court of Appeals in *Andrew v. Sculli* reiterated the qualified immunity standard on a motion for summary judgment:

> "A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry. If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."

853 F.3d 690, 697 n.8 (3d Cir. 2017) (quoting *Wright v. City of Philadelphia*, 409 F.3d 595, 600 (3d Cir. 2005)).

### A. Constitutional Violation

#### 1. Legal Standard

Plaintiff's claims for false arrest and malicious prosecution are brought pursuant to 42 U.S.C. § 1983, which provides a vehicle for vindicating violations of other federal rights. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). To state a claim under § 1983, Plaintiff must demonstrate that "(1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law." *Burt v. CFG Health Sys.*, No. 15-2279, 2015 U.S. Dist. LEXIS 48570, 2015 WL 1646849, at *2 (D.N.J. Apr. 14, 2015). The federal right allegedly violated in this case is Plaintiff's Fourth Amendment right to be free from unlawful seizure. Officer Ruiz does not deny that he was acting under color of state law at the time of the events in question.

Both "false arrest and malicious prosecution hinge on probable cause, [so] the constitutional violation question in this case turns on whether 'a reasonable officer could have believed that probable cause existed to arrest' the plaintiff at that time."[36] *Andrews*, 853 F.3d at

---

[36] "To assess claims of false arrest, the court must determine whether 'the arresting officers had probable cause to believe the person arrested had committed the offense.'" *Andrews*, 853 F.3d at 697 (quoting *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988)). A claim for malicious prosecution requires a showing that:

(1) the defendant[] initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor;

697 (quoting *Blaylock v. City of Philadelphia*, 504 F.3d 405, 411 (3d Cir. 2007)); *see Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988) ("The proper inquiry in a section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense."). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995). "[T]he standard does not require that officers correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, accurate." *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467 (3d Cir. 2016) (quoting *Wright*, 409 F.3d at 603). However, at this stage in the case, "summary judgment may be granted on the question of probable cause if a court concludes that 'the evidence, viewed most favorably to [the nonmoving party], reasonably would not support a contrary factual finding.'" *Id.* (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997)). Otherwise, this determination must be left to a jury. *Id.*

The probable cause analysis looks to, first, whether Officer Ruiz, "with at least a reckless disregard for the truth, made false statements or omissions that created a falsehood in applying for a warrant, and second, whether those assertions or omissions were material, or necessary, to the finding of probable cause." *Id.* (internal quotations omitted).

"[A]n assertion 'is made with reckless disregard when 'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to

---

(3) the proceeding was initiated without probable cause; (4) the defendant[] acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Id.* (quoting *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005)).

10

doubt the accuracy of the information he reported.'" *Id.* at 698 (quoting *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000)). "Omissions are made with reckless disregard where 'an officer withholds a fact in his ken that '[a]ny reasonable person would have known . . . was the kind of thing the judge would wish to know.'" *Id.* at 698 (quoting *Wilson*, 212 F.3d at 788).

> Inherent in this inquiry are two requirements. First, the officer must have knowledge of the information alleged to have been recklessly omitted. For this reason, we look only to the information available to the officer at the time of the swearing of the affidavit of probable cause. Second, the information must be relevant to the existence of probable cause. The relevance requirement "ensures that a police officer does not 'make unilateral decisions about the materiality of information'" by enabling a magistrate to decide independently, on the basis of an affidavit containing all relevant information, whether the circumstances give rise to probable cause. *Reedy v. Evanson*, 615 F.3d 197, 213 (3d Cir. 2010) (quoting *Wilson*, 212 F.3d at 787). At the same time, however, it recognizes that for practical reasons courts simply "cannot demand that police officers relate the entire history of events leading up to a warrant application." *Wilson*, 212 F.3d at 787.

*Dempsey*, 834 F.3d at 471 (3d Cir. 2016).

If the Court determines that the fact-finder could conclude that there were reckless misrepresentations or omissions in an affidavit, it must "'excise the offending inaccuracies and insert the facts recklessly omitted' from the affidavit and assess whether the reconstructed affidavit would establish probable cause." *Id.* at 469–70 (quoting *Wilson*, 212 F.3d at 789). This requires a "word-by-word reconstruction of the affidavit." *Id.* at 470.

### 2. Analysis

Turning to the merits of Plaintiff's argument that Officer Ruiz recklessly omitted information from the Affidavit and recklessly misrepresented several facts within the Affidavit, the Court first assesses the statements and facts that Plaintiff asserts was omitted/misrepresented. Second, the Court reconstructs the Affidavit. Third, the Court assesses the materiality of the changes in the reconstructed Affidavit as to the probable cause determination. *See Dempsey*, 834 F.3d at 470.

11

### i.    Omissions and Misstatements

To determine whether information was recklessly omitted from the Affidavit, the Court first looks to what information was available to Officer Ruiz at the time he swore out the Affidavit. The problem in this case is that much of the record evidence relied upon by Officer Ruiz comes from statements made by Rizzo and Bailey during subsequent proceedings by the Office of Municipal Investigations and the Independent Citizens Police Review Board. In both cases, neither Rizzo nor Bailey were asked about what they told Officer Ruiz at the time he interviewed them and thus their stated recollections of the event (as opposed to their recollection of what they told Officer Ruiz) are of no help in the Court's task of deciphering what information was available to Officer Ruiz at the time he prepared the Affidavit. *See Dempsey*, 834 F.3d at 471. To the extent that Rizzo gave inconsistent statements at his deposition and during the City's internal reviews, those inconsistencies are best resolved by a jury. Genuine issues of material fact remain regarding what various individuals conveyed to Officer Ruiz prior to his submission of the Affidavit. But Officer Ruiz also argues that even if the Affidavit was reconstructed in accordance with Plaintiff's factual averments, no jury could find a lack of probable cause. To that end, the Court must analyze each of the alleged omissions and misstatements in that context.

First, it is undisputed that Officer Ruiz had the 911 CAD available to him at the time he prepared the Affidavit. The 911 call varies from Montgomery's account of certain events and is the only statement that Officer Ruiz had from Plaintiff that gives "the other side of the story." It is relevant that the 911 caller who first reported the incident but was not later interviewed was the same person whose arrest was sought, and this is "the kind of thing the judge would wish to know." *Wilson*, 212 F.3d at 788. This is sufficient to demonstrate a reckless omission at the summary

judgment phase,[37] and a summary of what Plaintiff reported in the 911 call will be included in the reconstructed Affidavit.

Second, Plaintiff asserts that the Affidavit recklessly omitted any mention of the eyewitness account that Montgomery assaulted Plaintiff with a brick. Information suggesting that Montgomery was the aggressor and Plaintiff may have been acting in self-defense would constitute exculpatory evidence that could "undermine incriminating evidence, which standing alone establishes probable cause." *Tereo v. Smuck*, No. 16-cv-1436, 2018 U.S. Dist. LEXIS 157823, at *25–26 (M.D. Pa. Sept. 17, 2018) (noting that the Third Circuit "stressed that probable cause analysis requires consideration of a totality of the circumstances paired with a 'common sense approach'" and has not pronounced that perceived self-defense need not be included in affidavits of probable cause); *see also Andrews*, 853 F.3d at 699 ("When an officer submits a sworn affidavit of probable cause, he or she 'is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists.'" (quoting *Dempsey*, 834 F.3d at 469)). On the other hand, our Court of Appeals has not "specifically addressed self-defense in a precedential opinion and has defined only other circumstances in which other affirmative defenses do not negate probable cause." *Gorman v. Bail*, 947 F. Supp. 2d 509, 521 (E.D. Pa. 2013). In *Gorman*, the district court concluded that because claims of "self-defense to an assault necessarily admit involvement in a violent altercation," issues of self-defense are

---

[37] Again, as stated in *Andrews*:

> Although a finding of probable cause generally can be based on an officer's credibility determinations and independent assessments of conflicting evidence, "it is axiomatic that at the summary judgment stage, we view the facts in the light most favorable to the nonmoving party." *Dempsey*, 834 F.3d at 468. . . . Omissions are made with reckless disregard where "an officer withholds a fact in his ken that '[a]ny reasonable person would have known . . . was the kind of thing the judge would wish to know.'" *Id.* (quoting *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir.1993)).

853 F.3d at 698. That means that the question now before the Court is whether the Plaintiff has advanced sufficient record evidence that would permit a jury finding of reckless omission/misstatement, and the Court proceeds on that basis.

better decided by courts, and a police officer need not consider or disclose evidence of self-defense in affidavits of probable cause. *Id.* at 523. Based on the totality of the circumstances in this case, the fact that the eyewitnesses did not see the fight begin[38] and only one person, Plaintiff, sustained injuries, the Court concludes that information that Rizzo had reported to Officer Ruiz that Montgomery struck Plaintiff is something an issuing judge would want to know and it would be a reckless omission to leave it out.

Third, Plaintiff asserts that the Affidavit falsely states that Plaintiff's head injury was self-inflicted from his hitting his head on a retaining wall. Rizzo testified that he made no mention of a retaining wall to Officer Ruiz. Rizzo also testified that John Bailey made no mention of a retaining wall.[39] Because this directly contradicts what Officer Ruiz put in the Affidavit, a jury could conclude this statement was made with reckless disregard for the truth, and it will therefore be included in the reconstructed Affidavit. *See Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000).

Fourth, the Affidavit omits the fact that Officer Ruiz did not inspect the retaining wall where Plaintiff was said to have struck his head. Plaintiff infers that had Officer Ruiz inspected the wall, he would have observed that there was no blood or damage on the retaining wall, and that such added information in an affidavit would have both undermined Montgomery's account and challenged the representation that Plaintiff's injury was self-inflicted. In this first step of the inquiry, the Court asks whether this omission "*could* affect the probable cause determination" in order to determine if the omission was reckless. *Dempsey*, 834 F.3d at 471 n.9. The absence of any

---

[38] Officer Ruiz argues that it is "undisputed" that Plaintiff was the initial aggressor. However, that statement is disputed. (ECF No. 124 ¶¶ 7, 10.) Plaintiff simply does not affirmatively assert that Montgomery was the initial aggressor.

[39] According to Rizzo's testimony, he and Bailey spoke to the responding police officers together. (Rizzo Dep. ECF No. 133-3, at 59:15–20.) Rizzo testified that he did not recall hearing John Bailey say that Plaintiff injured his head by falling on a retaining wall and that there was no discussion among the police, Bailey, and himself about anyone coming into contact with a retaining wall. (*Id.* at 59:8–24 & 103:19–104:2.)

description of the retaining wall following the altercation could not affect the probable cause determination because the Affidavit did not give any indication that there was physical evidence corroborating the testimonials. But, in light of what Montgomery told Officer Ruiz about the retaining wall, the Court believes that out of completeness, the fact that Officer Ruiz did not examine the wall should be included in the reconstructed Affidavit.

Fifth, the Affidavit omits the fact that the altercation took place on Plaintiff's property. Although Officer Ruiz testified that no witness alerted him to the fact that the altercation made its way onto Plaintiff's porch, both Rizzo and Montgomery testified that they told Ruiz that such was the case, so this piece of information must be treated as having been available to Officer Ruiz at the time he prepared the Affidavit. Whose property the next-door neighbors were standing on when a neighborly disagreement morphed into a physical altercation has sufficient value to cause a reasonable person to know that a judge would want that piece of information in making a probable cause determination. The record shows that a police officer would "take into consideration in the case of a neighbor dispute where the dispute occurred," as "a basis" upon which an officer understands what has transpired, especially in a case where an officer must determine who was the aggressor.[40] The Court agrees, and this will be added to the reconstructed Affidavit.

Finally, the Court concludes that there has not been a "reckless" omission of Plaintiff's versions of events which needs to be included in the reconstructed Affidavit. It would merely repeat the content of the 911 call, which has now been included and which captures Plaintiff's account of the events. And, importantly, this is consistent with Plaintiff's own proposed reconstructed Affidavit, which provides the details of Plaintiff's 911 call, as Plaintiff does not propose an additional statement in the reconstructed Affidavit about what Plaintiff would have

---

[40] (Mulzet Dep., ECF No 125-7, at 12:12–14:2.)

said had he been interviewed by police. (*See* ECF No. 123, at 17–18.) Plaintiff's proposed reconstructed Affidavit includes language that "I never spoke with the complainant, Tarr." (*Id.*) Such addition is irrelevant as the inference from the absence of any post-altercation statement from Plaintiff in the Affidavit is that Plaintiff was never interviewed. *See Dempsey*, 834 F.3d at 471 n.9.

There are certainly issues of fact as to what the eyewitnesses told Officer Ruiz; however, viewing the facts in the light most favorable to Plaintiff, a reconstructed Affidavit with the arguably reckless misstatements and omissions corrected still establishes probable cause for Plaintiff's arrest and prosecution of both offenses, and no reasonable jury could conclude otherwise. Here is why.

## ii. Reconstructed Affidavit

The Affidavit reconstructed to include recklessly omitted information and to remove misrepresentations would read:

On 10/26/2015, **at 1241 hours Leo Tarr called 911 to report that his neighbor, James Montgomery, assaulted him with a brick and reported that he is bleeding profusely**. At 1300 hours, I, PO Antonio Ruiz was dispatched to [] Lakewood Street for a reported assault in progress. Upon arrival [five other police officers] were on scene with actor/victim separated. I first spoke With [James] Montgomery, resident of [ ] Lakewood Street, Montgomery told me shortly before Officers arrived, he was confronted by his neighbor from [ ] Lakewood, Leo Tarr. Montgomery told me that he and Tarr had a verbal altercation over a parking spot. Montgomery told me Tarr lunged at him with a brick, attempting to strike him with it. Montgomery, fearing for his safety, told me he pushed Tarr off of him, acting in self defense [sic]. When Montgomery pushed Tarr away from his person, Montgomery told me Tarr fell backward and struck his head on a retaining wall on Tarr's property. **I did not examine the retaining wall.**

Montgomery reported Tarr lunged at him a second time, again with a brick, attempting to strike him. Montgomery, fearing for his safety, told me he pushed Tarr away in self defense [sic]. Montgomery told me after pushing Tarr away the second time, he ran into his home.

16

I spoke Robert Rizzo, and John Bailey who witnessed the altercation while doing construction work across the street. ~~Both witnesses corroborate that Tarr had been the primary aggressor, lunged toward Montgomery twice with a brick, and Montgomery's auctions [sic] were clearly in self defense [sic]. According to witnesses Robert Rizzo, and John Bailey, while Tarr [was] attempting to attack Montgomery, Tarr sustained injury to his head by falling onto a retaining wall on his property.~~ **Rizzo did not see the altercation begin but described both men as aggressors swinging at each other. Rizzo saw an object in Tarr's hand but could not identify it. Rizzo reported that the fight ended when Montgomery hit Tarr in the head with a brick on Tarr's porch.**

City Medic 3 transported Tarr to Mercy Hospital for further treatment. Montgomery was not injured during the altercation, but expressed concern for his safety, as the actor is his next door [sic] neighbor.

Due to the facts and circumstances surrounding this incident, I will request for the arrest of Leo Tarr.

### iii. Materiality

Now the Court must evaluate "whether the recklessly omitted statements [and corrected misstatements], considered in the context of the affidavit as a whole, were omissions 'material, or necessary, to the finding of probable cause.'" *Dempsey*, 834 F.3d at 477 (quoting *Wilson*, 212 F.3d at 787). In order to grant summary judgment to Officer Ruiz, the Court must conclude that no reasonable jury could conclude that the reconstructed Affidavit lacked probable cause.

Plaintiff was charged with aggravated assault and harassment. With respect to Plaintiff's claim for false arrest, if probable cause exists for any one of the arresting offenses, Plaintiff's claim will not survive. *Dempsey*, 834 F.3d at 477. But, for the malicious prosecution claim, the Court must "assess whether any reasonable jury could find a lack of probable cause" as to both of the crimes charged. *Id.*

"A person is guilty of aggravated assault *if he* (4) *attempts* to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." 18 Pa. C.S. § 2702(a)(4) (emphasis added). Rizzo told police that Plaintiff had an object in his hand, and Montgomery told police that Plaintiff lunged at him twice with a brick in his hand, which constitutes a deadly

17

weapon. *Commonwealth v. Meekins*, 644 A.2d 765, 767 (1994) (referencing § 2702(a)(4)).

With respect to harassment:

(a) Offense defined. — A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:
>    (1) strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same;
>    (2) follows the other person in or about a public place or places;
>    (3) engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose;

18 Pa. C.S. § 2709(a)(1)–(3).

Before analyzing the reconstructed Affidavit, the Court bears in mind our Circuit's rule emphasized in *Dempsey* regarding victim witnesses:

[S]tatements of a victim witness are typically sufficient to establish probable cause in the absence of "[i]ndependent exculpatory evidence or substantial evidence of [a] witness's own unreliability" that "outweigh[s]" the probable cause that otherwise exists. *Wilson*, 212 F.3d at 790; *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997) ("When a police officer has received a reliable identification by a victim of his or her attacker, the police have probable cause to arrest."). Applying this principle, we have held that no reasonable jury could find a lack of probable cause where a victim identified the arrestee in a photo array, but other evidence suggested the perpetrator was significantly taller than the arrestee, a different victim did not identify the arrestee, and another witness claimed to have seen the arrestee at the time of the crime, *Wilson*, 212 F.3d at 791–92, and where a victim first identified a different person as her assailant before changing her story to identify the arrestee, *Sharrar*, 128 F.3d at 818-19. Thus, some "unreliability or exculpatory evidence" will not "fatally undermine[]" probable cause otherwise established. *Wilson*, 212 F.3d at 790.

834 F.3d at 477–78.

Here, the evidence shows that at the time Officer Ruiz prepared the Affidavit, he had three accounts of what happened on October 26, 2015. First, he had Montgomery's statement that Plaintiff was the initial aggressor who lunged at him twice with a brick in his hand trying to strike him, and that Montgomery pushed back in self-defense, all resulting in Plaintiff striking his head on a retaining wall. Second, he had eyewitnesses who did not see the altercation begin, but at least one, Rizzo, reported that he saw something in Plaintiff's hand, saw Plaintiff and Montgomery

swinging at each other, and saw Montgomery hit Plaintiff with a brick towards the end of the altercation. Third, Officer Ruiz had Plaintiff's 911 call that asserted that Montgomery hit him with a brick.

The inculpatory evidence is that Montgomery identified Plaintiff as the initial attacker, lunging at Montgomery twice with a brick in his hand in an effort to strike Montgomery. This is corroborated by the eyewitnesses' statements that both Plaintiff and Montgomery were at least swinging at each other and that Plaintiff had an object in his hand. The exculpatory evidence is primarily the eyewitnesses' statements, which did not address Montgomery's account of how Plaintiff injured his head, e.g. the retaining wall.

But whether Montgomery may have also committed assault is not a question relevant to the inquiry before the Court here. The fact that Montgomery struck Plaintiff with a brick towards the end of the altercation does not undermine the "fair probability" that Plaintiff had committed aggravated assault and harassment himself when, as Montgomery told Ruiz, Plaintiff twice came after Montgomery with a brick. Even assuming that Officer Ruiz would have had reason to doubt Montgomery's statement that Plaintiff's head injury was a result of falling on the retaining wall, in both Montgomery's and the eyewitnesses' accounts, that injury occurred after the physical altercation began. It shows an escalation of violence but sheds no light on whether Plaintiff was the initial aggressor who had an object in his hand, and thus it does not constitute "plainly exculpatory evidence." [41]

---

[41] To the extent that Plaintiff suggests that Montgomery should have been arrested (either in lieu of or in addition to Plaintiff's arrest), the theory of "failure to arrest" is one brought under the Equal Protection Clause based on a "class of one" theory where "an individual is intentionally treated differently from others similarly situated without a rational basis." *Berger v. Bucks Cty. Comm'rs Office*, No. 09-cv-2235, 2010 U.S. Dist. LEXIS 63817, at *8 (E.D. Pa. June 21, 2010). Plaintiff consented to the dismissal of his Equal Protection claim in this case. *See* Note 1 *supra*.

A claim for false arrest focuses on "whether 'the arresting officers had probable cause to believe *the person arrested* had committed the offense.'" *Andrews*, 853 F.3d at 697 (quoting *Dowling*, 855 F.2d at 141). A claim for malicious prosecution likewise implicates the same probable cause consideration. In cases involving physical altercations, the officers' failure to arrest the other person "is irrelevant [when] the officers had probable cause to arrest" Plaintiff. *See Vargas v. City of Chicago*, No. 96-cv-1372, 1996 U.S. Dist. LEXIS 17817, at *12 (N.D. Ill. Nov.

19

The eyewitnesses' accounts also do not undermine Montgomery's assertion that Plaintiff was the primary aggressor because Rizzo testified that he did not see how the altercation began but did see Plaintiff with an object in his hand and both men swinging at each other. Therefore, there is not "independent exculpatory evidence" that Plaintiff did not commit aggravated assault prior to his own injury, *Wilson*, 212 F.3d at 790, nor do the differing accounts of the source of Plaintiff's head injury, which all statements confirm occurred after the altercation began, present "substantial evidence of [Montgomery's] own unreliability." *Id.*; *Sharrar*, 128 F.3d at 818. "The probable cause inquiry looks to the totality of the circumstances; the standard does not require that officers correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, accurate." *Wright*, 409 F.3d at 603.

The Court concludes that applying the *Dempsey* standard, no reasonable jury could find a lack of probable cause, based on the reconstructed Affidavit, for charges against Plaintiff of aggravated assault and harassment. As the reconstructed Affidavit reflects, Officer Ruiz had both the content of the 911 call, and the victim statement from Montgomery that he was attacked by Plaintiff and fought back in self-defense, causing injury to Plaintiff. Officer Ruiz had witness statements that both Plaintiff and Montgomery were engaged in some sort of altercation with one another and that Plaintiff had an object in his hand, corroborating Montgomery's statement. Plaintiff's 911 call did not indicate that Montgomery started the altercation, only that he (at some point) hit Plaintiff.

Viewing the evidence in the light most favorable to Plaintiff, the alterations in the reconstructed Affidavit would not have been material to the judicial determination at the warrant stage to alter the determination as to the issue central here—that there was a "fair probability" that

---

18, 1996) (conflicting evidence as to who was the initial aggressor would have provided probable cause to arrest both involved individuals, but such fact is irrelevant to false arrest analysis of the one person actually arrested).

Plaintiff committed aggravated assault and harassment. "A finding of probable cause is therefore a complete defense to [Plaintiff's] constitutional claims, and, accordingly," entitles Officer Ruiz to qualified immunity. *Goodwin v. Conway*, 836 F.3d 321, 327 (3d Cir. 2016).

### B. Qualified Immunity

Even if a reasonable jury could find a lack of probable cause in the reconstructed Affidavit and thus find that Officer Ruiz violated Plaintiff's constitutional rights, Plaintiff has also failed to overcome the second prong of qualified immunity. "Government actors are entitled to qualified immunity unless they violated a constitutional right 'so clearly established that every reasonable official would have understood that what he is doing violates that right.'" *Fields v. City of Phila.*, 862 F.3d 353, 360–61 (3d Cir. 2017) (quoting *Zaloga v. Borough of Moosic*, 841 F.3d 170, 175 (3d Cir. 2016)).

Plaintiff argues that "the right to be free from arrest based on an officer knowingly or deliberately, or with a reckless disregard for the truth, making false statements or omissions in an affidavit of probable cause that create falsehoods in applying for a warrant" is clearly established. (Pl.'s Br. in Opp'n, ECF No. 123, at 20.) "To conduct the clearly established inquiry, we frame the right in light of the specific context of the case, not as a broad general proposition, as it needs to be specific enough to put every reasonable official on notice of it." *Fields*, 862 F.3d at 361 (internal quotations omitted). This Court's recent opinion in *Richter v. Pennsylvania State Police* addressed a case in the probable cause context and framed the right as "the right to be free from an arrest based on an officer's deliberate or reckless omission of facts to a judge assessing probable cause, *when those facts would be sufficient to vitiate probable cause*." No. 15-775, 2018 U.S. Dist. LEXIS 99748, at \*22 (W.D. Pa. June 14, 2018) (emphasis added). Plaintiff points to *Richter* to show that his proposed framing is sufficiently specific. However, in light of the Supreme Court's

21

recent opinion in *City of Escondido v. Emmons*, 139 S. Ct. 500 (2019) (per curiam), the Court agrees with Officer Ruiz that more specificity is required in this case.

In *City of Escondido*, the Supreme Court repeated that "[s]pecificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." 139 S. Ct. at 503 (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152–53 (2018)). "[T]he right's contours [must be] sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.*

In this case, the Court determines that the right here is accurately framed as "the right to be free from an arrest based on an officer's deliberate or reckless omission of facts to a judge assessing probable cause, when those facts give rise to the possible affirmative defense of self-defense or undermine a victim's statement to police of self-defense."[42]

The Court has already concluded that the facts alleged to have been omitted or misrepresented do not rise to the level of "plainly exculpatory" or "sufficient to vitiate probable cause." At most, the inclusion/correction of omitted and misrepresented facts call into question whether Plaintiff's alleged conduct was a product of self-defense. Along those lines, the duty to include evidence of self-defense, contradicted by the victim's statement to police, was certainly not clearly established at the time of the events at issue, because it is unsettled in this Circuit to this day. *See Gorman v. Bail*, 947 F. Supp. 2d 509, 521 (E.D. Pa. 2013). The same is true in other circuits. *See, e.g., McCoy v. Hous. Auth. of New Orleans*, No. 15-398, 2016 U.S. Dist. LEXIS 68615, at \*56 (E.D. La. May 24, 2016) ("The Fifth Circuit has expressly declined to address

---

[42] The Court disagrees with Officer Ruiz that the right should be framed as one in which an officer arrests the Plaintiff "after receiving three witness statements about Plaintiff attempting an assault with a brick" as the facts viewed in the light most favorable to Plaintiff do not support the contention that three witnesses informed police that Plaintiff attempted to assault Montgomery with a brick. (ECF No. 114, at 8.)

22

whether evidence of an affirmative defense such as self-defense is relevant to a determination of probable cause."). Indeed, at least one district court in this Circuit has ruled that a police officer need not consider or disclose evidence of self-defense in affidavits of probable cause. *Gorman*, 947 F. Supp. 2d at 523.

Therefore, Officer Ruiz is entitled to qualified immunity.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment, ECF No. 113, is granted. An appropriate Order will issue.

Mark R. Hornak
Chief United States District Judge

Dated: February 28, 2019

cc:  All counsel of record